# UNITED STATES DISTRICT COURT

for the
Eastern District of Louisiana



**SEALED**

In the Matter of the Search of

PREMISES KNOWN AS
1732 HARVEST DRIVE
HOUMA, LOUISIANA 70360

)
)
)
)
)
)

Case No.  21-MC-722

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A" to the attached affidavit

located in the _____ Eastern _____ District of _____ Louisiana _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B" to the attached affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252 | Certain activities relating to material involving the sexual exploitation of minors |
| 18 U.S.C. § 2252A | Certain activities relating to material constituting or containing child pornography |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/Scott Rodrigue
*Applicant's  signature*

TFO Scott Rodrigue, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    4/8/21

*Dana M. Douglas*
*Judge's signature*

City and state:  New Orleans, Louisiana

Hon. Dana M. Douglas, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE | * | NO.  21-MC-722 |
| APPLICATION FOR A SEARCH | | |
| WARRANT FOR THE PREMISES | * | **FILED UNDER SEAL** |
| KNOWN AS: 1732 HARVEST DRIVE | | |
| HOUMA, LOUISIANA 70360 | * | |
| | * | |

\* \* \*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Scott Rodrigue, being first duly sworn, state as follows:

1.      I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI)
assigned to the New Orleans Division, and I have been a TFO since January 2021. I am currently
assigned to investigate matters involving the online exploitation of children, particularly in relation
to violations of Title 18, United States Code (U.S.C.), Sections 2251, 2252, and 2252A, which
criminalize, among other things, the production, possession, receipt, and distribution of child
pornography.

2.      This affidavit is made in support of an application for a search warrant to search
and seize instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2252 and 2252A,
which criminalize, among other things, the possession, receipt, and distribution of child
pornography, and other related materials. The items that are the subject of the search and seizure
applied for in this affidavit are more specifically described in **Attachment B**.

3.      The premises described in this affidavit contains a residence more specifically
described as; 1732 Harvest Drive, Houma, Louisiana 70360 (*See* **Attachment A** for further
details.)

4.      The statements contained in this affidavit are based in part on information provided by Special Agents of the FBI, Task Force members of the FBI, and on my experience and background as a TFO with the FBI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2252 and 2252A, are located at the above address.  As specified in more detail in this affidavit, it is believed that the residence is occupied by Gail Walker, Thomas Walker Jr. and Kimberly Walker.

## STATUTORY AUTHORITY

5.      This investigation concerns alleged violations of 18 U.S.C. §§ 2252 and 2252A. This material involves the visual depiction of minors engaging in sexually explicit conduct. Included within the definition of "sexually explicit conduct" found within 18 U.S.C. § 2256(2)(A) is the "actual or simulated... lascivious exhibition of the genitals or pubic area of any person."

## PROBABLE CAUSE

6.      Based on my training and experience, I know that P2P file sharing is a method of communication available to Internet users through the use of special software.  Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network.  These P2P networks are commonly referred to as decentralized networks because each user of the network is able to distribute information and queries directly through other users of the network, rather than relying on a central server to act as an indexing agent, where all of the information is first deposited before it is distributed.  A user first obtains the P2P software, which can be downloaded from the Internet.  In general, P2P software allows the user to set up files on a computer to be shared with others running compatible

P2P software.  However, only files that are specifically stored in shared folders are exchanged. Therefore, a user needs simply to move a file from one folder to another to stop the distribution across the Internet.  Further, once a file or files are placed in a shared folder, its distribution is dependent only on the machine being turned on and connected to the Internet.

The BitTorrent Network

7.     Your affiant knows BitTorrent to be one type of P2P file sharing software.  Users of the BitTorrent network wishing to share new content will use a BitTorrent program to create a "torrent" file for the file or group of files they wish to share.  A torrent file is a small file that contains information about the file(s) and provides a method for a user to download the file(s) referenced in the torrent from other BitTorrent users.  Torrent files are typically found as the result of keyword searches on Internet sites that host or link to them.  Torrent files may be referenced by their "infohash," which uniquely identifies the torrent based on the file(s) associated with the torrent file.  To download file(s) from other users on the BitTorrent network, a user typically obtains a torrent file.  The BitTorrent software processes the information in the torrent file and locates devices on the BitTorrent network sharing all or parts or the actual file(s) being sought. The download of the content referenced in the torrent is achieved after the requesting computer and the sharing computer(s) directly connect to each other through the Internet using the BitTorrent software.

8.     One of the advantages of P2P file sharing is that multiple files may be downloaded at the same time.  In addition, a user may download parts of one file from more than one source computer at a time.  For example, a BitTorrent user downloading a movie file may actually receive parts of the movie from multiple computers.  The advantage of this is that it speeds up the time it takes to download the file.  It is possible to also download the file or files from only one computer.

9.     The BitTorrent Network bases all of its file shares on the Secure Hash Algorithm (SHA1). This mathematical algorithm allows for the digital fingerprinting of data.  Once you check a file or files with a SHA1 hashing utility capable of generating this SHA1 value (the fingerprint), that will be a fixed-length unique identifier for that file.  The SHA1 hash is the current Federal Information Processing and Digital Signature Algorithm.  The SHA1 is secure because it is computationally infeasible for two files with different content to have the same SHA1 hash value.

10.     A P2P file transfer is assisted by reference to an Internet Protocol (IP) address.  This address, expressed as four numbers separated by decimal points, is unique to a particular computer during an online session.  The IP address provides a unique location making it possible for data to be transferred between computers.

11.     IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) can assign a different unique number to a computer when it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer the same IP address each time the computer accesses the Internet.

Download of CP

12.     On December 5, 2019, an Undercover Covert Employee (UCE) connected to the Internet with a Peer-2-Peer (P2P) BitTorrent application. From approximately 0113 hours through 0147 hours Central Standard Time (CST), the UCE was running BitTorrent software and was connected to the Internet in an undercover capacity and conducted an investigation on the BitTorrent P2P file sharing network.

13.     A connection was made between the UCE's investigative computer and a computer running BitTorrent software having the assigned IP address of 108.200.206.11.   The UCE identified multiple files of interest being shared by the device utilizing IP address

108.200.206.1116.  UCE successfully downloaded 16 files from IP address.200.206.11.  The device at IP address 108.200.206.11 was the only IP address that shared the contents for the files downloaded, and as such, the files were downloaded directly and wholly from this IP address.  The files being shared that the UCE downloaded clearly constitute child pornography, including, but not limited to the following representative examples:

a)      File Name: (Pthc) Lisa 4yo Wichet Opas Schwanz 4

Filed contains a video of a pre-pubescent age female that appears to be between the ages of six to ten.  At the start of the video, the female is clad in only a yellow shirt which falls to the waist line exposing her bare vagina.  She is facing an unknown male with his erect penis in her hand and is tugging on the penis in an attempt to masturbate it.  The female then steps closer to the seated male and rubs the erect penis on the bare vagina.

b)  File Name: 7 Year with Dad

File contains a video of a pre-pubescent age female that appears to be between the ages of seven to ten.  At the start of the video, the female gets on her knees in front of an unknown male who removes his penis from his pants and the female begins giving the male oral sex.  The video also shows the female remove her pants, lay down and begin rubbing her bare vagina and inserting her fingers.  Toward the end of the video, the female stands up with her back to the male and the male inserts his fingers into the female and then become engaged in sexual intercourse with young female.

c)  File Name: Jenny 9yo zoo 5yo Girl Dog

File contains a video of a pre-pubescent age female that appears to be between nine to ten years of age.  At the start of the video, the young female is laying naked, flat on he back with a colored blindfold over her eyes exposing her bare vagina.  An unknown male then begins rubbing a stick of butter on the girls' bare vagina and allowing a dog to lick it off.  The female then gives the unknown male oral sex while still laying nude, flat on her back.

14.    Using the BitTorrent program, it was determined that the aforementioned IP address, 108.200.206.11, was registered to AT&T on the specific aforementioned date and times.

15.    Subsequently, an administrative subpoena was served to AT&T requesting subscriber information for the customer assigned IP address 108.200.206.11 during the specific aforementioned dates and times.  The subpoena return yielded the following results:

Subscriber Name:  Gails Walker

Address:  1732 Harvest Drive, Houma, Louisiana 70360

Phone:  985-858-8994

IP Address Assigned:  Start Date (UTC) December 5, 2019 07:20AM End Date (UTC) December 5, 2019 07:40AM

16.    Using search parameters provided by the subpoena return, a subsequent open-source database search yielded the following results:

Name:  Gail Walker

Date of Birth:  August 25, 1948

Social Security Account Number:  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

Address: 1732 Harvest Drive, Houma, Louisiana 70360

17.     Based on the above database search and subpoena return, law enforcement authorities conducted surveillance at 1732 Harvest Drive, Houma, Louisiana on multiple dates between July 2, 2020, and March 19, 2021.

18.     On July 2, 2020, an FBI Task Force Office (TFO) conducted surveillance on 1732 Harvest Drive, Houma, Louisiana and observed an older model blue Chevrolet pick-up truck with an unreadable Louisiana license plate parked in the drive-way.  In addition, a silver Honda sedan and a white Nissan pick-up truck were parked in the drive-way, but both were parked in a manner that the license plates could not be observed.

19.     On July 27, 2020, a TFO conducted surveillance on 1732 Harvest Drive, Houma, Louisiana, and observed a small white pick-up truck parked in the drive-way, but the rear of the vehicle was facing away from the street blocking a view of the license plate.

20.     On February 4, 2021, a TFO conducted surveillance on 1732 Harvest Drive, Houma, Louisiana.  The TFO observed two vehicles backed into the drive-way of the residence. One was a small white Nissan pick-up truck and the other was a small white Chevrolet pick-up truck.  Due to the fact that both vehicles were backed in, no license plates were visible. Additionally, no one was seen coming or leaving the residence during the surveillance.

21.     With the assistance of the Houma Police Department, a check of the residence was conducted in the nighttime hours of February 4, 2021.  Two vehicles observed during prior surveillance operations, one Chevrolet pick-up truck and one Nissan pick-up truck, were present at the residence at the time of the check.  Neither had license plates.  Additionally, a silver Hyundai sedan was observed in the drive-way bearing Louisiana license plate 329 AUX, which Louisiana state records revealed was registered to Gail Walker (White female, Date of Birth; August 25, 1948, with a listed residence of 1732 Harvest Drive, Houma, Louisiana 70360).

22.     On March 19, 2021, a TFO again conducted surveillance at 1732 Harvest Drive, Houma, Louisiana 70360.  Law enforcement authorities observed numerous vehicles parked at the residence, including the 4-door silver Hyundai sedan bearing Louisiana license number 329 AUX described *supra.*, and a white 4-door Chevrolet Blazer sports utility vehicle bearing Louisiana license plate number 473 DWQ, which was subsequently determined to be registered to Kimberly Walker.

23.     During the surveillance on March 19, 2021, a Chevrolet pick-up truck and a Nissan Frontier pick-up truck, which appeared to be the same cars observed on July 2, 2020, July 27, 2020, and February 4, 2021, were parked in the rear yard of the residence.  License plates were unable to be observed due to the distance from the street.

24.     While conducting surveillance on March 19, 2021, law enforcement authorities stopped briefly in front of the residence and checked for open or public access Internet connections. No open or public access internet connections were discovered.

25.     During the surveillance on March 19, 2021, a white female whose appearance was consistent with a driver's license photograph of Gail Walker, which was obtained through a law enforcement date base search, exited the residence and stood in the front yard.

26.     Records of the State of Louisiana reflect that an individual named Thomas Walker is listed as a prior owner of a Nissan Frontier pick-up truck, which appears to be the make and model of one of the vehicles observed during surveillance in July 2020, February 2021, and March 2021.

27.     It is believed that Thomas Walker, born in 1973 and Kimberly Walker, born in 1969 are the children of Gail Walker, born in 1948.  Thomas' now-expired Louisiana driver's license lists the residence in question, 1732 Harvest Drive, as his primary residence.  Additionally, a law

enforcement data base search revealed a Nissan pick-up, matching the description of one of the vehicles observed during the surveillance were registered to Thomas Walker using the address of 1732 Harvest Drive in Houma, Louisiana.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

28.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the PREMISES, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

29.     *Probable cause.*  I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

30.     Forensic *evidence*.  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.   Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.   Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files

were created and the sequence in which they were created, although this information can later be falsified.

b.      As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (*e.g.*, registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated

into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (*e.g.*, a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (*e.g.*, internet searches indicating criminal planning), or consciousness of guilt (*e.g.*, running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.      A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present

on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.      I know that when an individual uses a computer to access, view, download, and store child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

31.      Necessity *of seizing or copying entire computers or storage media.*  In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

a.      The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time,

and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.      Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.      Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

32.      *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

33.     Because several people share the PREMISES as a residence, it is possible that the PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

34.     Based upon the above information, I believe probable cause exists that there have been one or more violations of Title 18, U.S.C., Sections 2252 and 2252A, which prohibit, among other things, the possession, receipt, and distribution, of depictions of minors engaged in sexually explicit conduct.

35.     Further, I believe that this evidence will be found at 1732 Harvest Drive, Houma Louisiana 70360, as computer equipment and peripherals, and other items listed in **Attachment B**.  **Attachment A** is attached to this affidavit and is incorporated by reference as if fully set forth herein.

36.     In consideration of the foregoing, your Affiant respectfully requests that this Court issue a search warrant for 1732 Harvest Drive, Houma, Louisiana 70360, authorizing the search of said address for the items described in **Attachment B**, and the seizure of such items for the purpose of searching and analyzing them off-site as set forth above.

Respectfully submitted,

*/s/Scott Rodrigue*
Scott Rodrigue
Task Force Officer
Federal Bureau of Investigation

Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue.  In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.

Subscribed and sworn before
me this ___8th___ day of April, 2021

_____
HONORABLE DANA M. DOUGLAS
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

The residence is located at 1732 Harvest Drive in Houma, Louisiana 70306, and further described a single-family residence, positioned on the south side of Harvest Drive. It is constructed of brick with a wide open drive-way on the left side. The numerical numbers of *1732* depicting the address are clearly marked on the mail box in front of the location. The front door of the residence is located in the front center of the location with two large windows to the right of the front door and one large window to the left of the front door.



**ATTACHMENT B**

**LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED**

This affidavit is in support of application for a warrant to search the premises known as 1732 Harvest Drive, Houma, Louisiana 70360, which is more specifically identified in the body of the application, including, but not limited to, any computers, associated storage devices and/or other devices located therein that can be used to store information and/or connect to the Internet, for records and materials evidencing violations of 18 U.S.C. §§ 2252 and 2252A, which criminalize, in part, the possession, receipt, and transmission of child pornography (defined in 18 U.S.C. § 2256), the violations involving as-yet-unidentified individual(s) and occurring after October 1, 2019, as more specifically identified below:

1.    Any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, routers, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPG), and any electronic data storage devices including, but not limited to hard ware, software, diskettes, backup tapes, CDROMS, DVD, Flash memory devices and other storage mediums; any input/output peripheral devices, including but not limited to

passwords, data security devices, and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

2.    Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

3.    Any and all visual depictions of minors.

4.    Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, P2P software.

5.    Child pornography in any form, including, but not limited to, the following:

a.    books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

b.    originals, copies, and negatives of visual depictions of minors engages in sexually explicit conduct as defined in 18 U.S.C. § 2256; and

c.    motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

6.     Information or correspondence pertaining to the possession, receipt, distribution, production, or attempted possession, receipt, distribution, or production of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail, including, but not limited to:

a.   Any and all notes, documents, records, or correspondence, in any format and medium, including, but not limited to, envelopes, letters, electronic mail, internet identities or screen names, chat logs, and electronic messages, pertaining to the possession, receipt, access to, or transmission through interstate or foreign commerce, including by U.S. mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by U.S. mail or by computer of any visual depiction of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256; Records evidencing occupancy or ownership of the premises described above including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; and Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for internet access, and handwritten notes.

3

7.     All other records and materials relating to violations of 18 U.S.C. §§ 2252 and 2252A.

8.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.   evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.   evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.   evidence of the lack of such malicious software;

    d.   evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    e.   evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    f.   evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

9.  Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions,

including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.